IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| SHERRI K. MOORE, | Case No. 6:16-cv-01331-AA |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

AIKEN, Judge:

Plaintiff Sherri K. Moore brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## BACKGROUND

In June 2012, plaintiff applied for SSI. She alleged disability beginning June 1, 2009, due to depression, bipolar disorder, fibromyalgia, post-traumatic stress disorder, chronic back

pain, and high blood pressure. Her application was denied initially and upon reconsideration. On November 23, 2015, plaintiff appeared at a hearing before an ALJ. She testified and was represented by an attorney. A vocational expert ("VE") also testified. The ALJ found plaintiff not disabled in a written decision issued January 28, 2016. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since her application date of June 28, 2012. 20 C.F.R. §§ 416.9220(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: "chronic back pain, unspecified diffuse connective tissue disease, bipolar depression, borderline intellectual functioning, migraine, chronic pain syndrome, obesity, carpal tunnel syndrome, osteoarthritic changes to the joints of the hands, . . . and edema of the legs and feet." Tr. 20; 20 C.F.R. §§ 416.9220(a)(4)(ii), (c). At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 416.9220(a)(4)(iii), (d).

The ALJ found plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 C[.F.R. §] 416.967(b) except she can lift, carry, push, and pull objects that weigh up to 20 pounds occasionally and up to ten pounds frequently; can stand and walk for up to six of eight hours; can sit for up to six of eight hours; can no more than frequently operate foot controls with either lower extremity; can no more than frequently handle, finger, or feel with either upper extremity; can never climb ladders or scaffolds; can no more than frequently climb ramps or stairs; can never tolerate exposure to unprotected heights and/or moving mechanical parts; is limited to the performance of simple, routine tasks; can use judgment for only simple work-related decisions; and can no more than occasionally balance, stoop, kneel, crouch, or crawl.

Tr. 22. At step four, the ALJ concluded plaintiff could not perform any of her past relevant work. 20 C.F.R. §§ 416.9220(a)(4)(iv), (f). At step five, however, the ALJ found that plaintiff could perform work existing in the national economy; specifically, plaintiff could work as a laundry sorter, routing clerk, or photocopy machine operator. 20 C.F.R. §§ 416.9220(a)(4)(v),

(g)(1). Accordingly, the ALJ found plaintiff not disabled and denied her applications for benefits.

## DISCUSSION

Plaintiff alleges the ALJ erred by: (1) discrediting plaintiff's testimony about the severity of her symptoms without legally sufficient justification; (2) ignoring a pertinent portion of the opinion of examining psychologist, Dr. Ewell; (3) violating his duty to develop the record with respect to the extent of plaintiff's mental limitations; (4) ignoring treating physician Dr. Ramirez's limitation regarding forceful flexion of the elbows; (5) formulating an incomplete RFC; and (6) finding plaintiff could perform jobs that exceed her physical and mental limitations.

Before proceeding to plaintiff's allegations of error, I note that remand would be necessary in this case even if all plaintiffs' arguments failed. Although the ALJ acknowledged that plaintiff alleged she became disabled in 2009, all findings in the decision are tied to plaintiff's 2012 application date. *See* Tr. 18 (concluding that plaintiff has not been under a disability "since June 28, 2012, the date the application was filed"); Tr. 20 (finding that plaintiff has engaged in no substantial gainful activity since the application date). This oddity appears attributable to some confusion about a possible amended onset date. On December 16, 2015, shortly after her disability hearing, plaintiff obtained new representation. *See* Tr. 179. In a letter dated December 17, 2015, the firm that represented plaintiff at the hearing wrote to the ALJ to amend the disability onset date to plaintiff's application date of June 28, 2012. Tr. 203. In his written decision, the ALJ expressly declined to amend the alleged onset date because plaintiff retained new counsel on December 16, 2015, one day before that letter was written. *See* Tr. 18

(acknowledging receipt of the request but finding that due to the change in representation, the "original onset of disability stands").

Whatever the reason for the error, remand is necessary to correct it. The ALJ made no findings with respect to three years during the alleged period of disability. Although neither party points out this particular error, I raise it *sua sponte* because I cannot review a decision the ALJ did not make. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."). Moreover, as explained in further detail below, the record strongly suggests that the error was harmful because plaintiff's mental limitations appear to have been substantially more severe during the 2009 to 2012 period than they were at the time of the hearing.

I now proceed to address plaintiff's allegations of error.

I. *Plaintiff's Subjective Symptom Testimony*

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff testified that she lives by herself in a camp trailer at an RV park. She washes dishes, does laundry, and completes other chores like sweeping and mopping, but testified she

requires frequent breaks when doing any chores that cannot be performed in a seated position. On a typical day, she takes a shower, cleans up her house, goes to Bi-Mart or Dollar Tree, works on her computer (she is learning the applications of Microsoft Office), and cooks herself a "nice" dinner like pork chops or sloppy joes. She does her own grocery shopping. She is a "loner" but talks to the RV park manager when she sees him and has a friend in Utah with whom she communicates by phone.

At the hearing, the ALJ asked plaintiff why she cannot work. Plaintiff provided three answers. First, she cited her pain standing and walking, but acknowledged that she probably could do a job like folding towels at a hotel if she could stay seated to do the work. Second, plaintiff explained that she faces transportation barriers. She lost her driver's license due to inability to pay fines and, as a result, cannot drive. The Dial-a-Ride on which she relies is not always available and the nearest bus stop is more than a mile away from the RV park. Finally, plaintiff noted that she is "slow" and has problems learning. As an example, she explained that at her most recent job—a call center operator for Nintendo—she had to take the introductory "class" twice. Tr. 59. She also stated that she was "asked to leave" that job after one year because she could not perform "up to par." Tr. 50. She took too long to explain how to do things, causing her calls to exceed the target per-call time limits set by the call center.

Before she moved to the trailer in August 2015, plaintiff spent nearly three years at a homeless shelter for women and children. Each person at the shelter was expected to perform fifteen minutes' worth of "chores" each day. Tr. 64. Plaintiff spent her daily fifteen minutes working as a "sous chef": cutting vegetables, peeling potatoes, and cleaning up. Tr. 45. She could perform most of her chores sitting down. At the shelter, she also helped other residents apply for and learn to use free "Obama phones." Tr. 46.

Page 6 – OPINION AND ORDER

The ALJ concluded that plaintiff's impairments could be expected to produce some degree of symptoms, but found her testimony about the severity of those symptoms not entirely credible. The ALJ gave several reasons for discounting plaintiff's testimony. First, he found that "[t]he physical and mental capabilities required to perform" the activities and social interactions plaintiff engaged in every day "replicate those necessary for obtaining and maintaining employment." Tr. 26. An ALJ properly may discount a claimant's statements about symptom severity if the claimant's activities of daily living would be transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, however, plaintiff's daily activities—for example, performing basic household chores with breaks or intermittently helping others learn to use their new cellular phones—are insufficient to demonstrate the ability to work full-time. *See id.* (holding that the ALJ's erroneously relied on the plaintiff's daily activities to discredit symptom testimony because there was no evidence that the plaintiff spent a "substantial part" of the day "engaged in pursuits" transferable to a work setting). On the record presented here, the ALJ's reliance on the transferability of plaintiff's daily living skills to a work setting is not a convincing reason to discount plaintiff's symptom statements.[1]

The ALJ also found that plaintiff's impairments are well-controlled with medication and that plaintiff generally pursued conservative treatment. He found no recommendations in the medical records for "aggressive treatment modalities" such as chiropractic adjustments, physical therapy, bariatric or other surgery, intensive counseling, pain management, or nerve blocks. Tr. 27. The ALJ linked this course of treatment to the generally mild physical findings in the treatment records.

---

[1] An ALJ also may discredit a claimant's testimony about her symptoms if that testimony contradicts her testimony about activities of daily living. *Orn*, 495 F.3d at 639. Here, however, the ALJ's reference to daily activities unambiguously refers to skill transferability, not to a conflict between plaintiff's testimony and activity level.

Page 7 – OPINION AND ORDER

A claimant's failure to pursue more aggressive treatment (or medical providers' failure to recommend more aggressive treatment) may undermine allegations that symptoms are disabling. *Tommasetti v. Astrue*, 533 F.3d 1025, 1040 (9th Cir. 2008). Having carefully reviewed the record, I find that conservative treatment is a clear and convincing reason to give less weight to plaintiff's testimony about her physical symptoms, such as pain and fatigue. However, plaintiff's symptoms related to depression and bipolar disorder do not appear to have been so consistently with medication. And although the ALJ noted that plaintiff never undertook intensive counseling, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (citation and quotation marks omitted). Accordingly, conservative treatment is not a convincing reason to discount plaintiff's statements about her mental limitations.

The ALJ also noted that when he asked plaintiff why she could not work, she referred to her transportation difficulties. An ALJ permissibly may consider evidence that suggests a claimant stopped working for reasons other than disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). But here, the ALJ's reason is unconvincing. The ALJ mentioned the transportation issue without acknowledging that plaintiff also mentioned two disability-related reasons for not working: difficulty learning new concepts and pain standing and walking. Significantly, the transportation difficulties are location-specific, tied to plaintiff's living situation at the RV park. Plaintiff stopped working long before she moved to her current living situation. That undermines the strength of the inference that difficulty with transportation was the real reason she stopped working.

Finally, the ALJ cited his observations of plaintiff at the hearing. The ALJ found that

> [t]hroughout the claimant's hearing, she was fully oriented, well-groomed, and highly articulate. She understood all questions, and answered them clearly and

> competently. She was in a good mood and actively participated in the hearing process. Her mentation was thoughtful and logical. She demonstrated no pain, fatigue, difficulty, or discomfort during the hearing, which lasted one hour and 15 minutes.

Tr. 23. That paragraph is a classic example of "sit and squirm" jurisprudence, which is generally disfavored and may not form the sole basis for discounting a claimant's testimony. *Orn*, 495 at 639. Nonetheless, the "inclusion of the ALJ's personal observations does not render the decision improper." *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). Two broad rules emerge from the Ninth Circuit's cases on "sit and squirm" jurisprudence. First, the *absence* of symptom manifestation (for example, a plaintiff's failure to demonstrate pain or fatigue at the hearing) is not a permissible basis to discredit symptom testimony. Second, a *conflict* between alleged symptoms and abilities demonstrated at the hearing (for example, a plaintiff's ability to walk without a cane notwithstanding testimony that she always uses one) may be considered in evaluating symptom testimony.

Applying those rules here, the ALJ erred by finding that plaintiff's failure to demonstrate pain or fatigue at the hearing undermined her allegations of physical symptoms. Ordinarily, the ALJ could take into consideration plaintiff's ability to understand and respond to questions at the hearing in formulating limitations related to her ability to understand and follow instructions. But here, the ALJ did not provide any other legally sufficient reason to doubt plaintiff's statements about her mental limitations. His observations of plaintiff's hearing conduct are therefore insufficient, standing alone, to support discrediting those statements. *See Orn*, 495 F.3d at 639.

In sum, plaintiff's general conservative treatment for her physical symptoms is a clear and convincing reason to give less weight to plaintiff's allegations about the disabling effect of her physical symptoms. Accordingly, the ALJ's decision to partially discredit those allegations

Page 9 – OPINION AND ORDER

is upheld. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that an ALJ's decision to discredit a plaintiff's symptom testimony may be upheld even if not all of the ALJ's reasons are legally valid). However, the ALJ did not provide legally sufficient reasons to discredit plaintiff's statements about her mental impairments.

II. *Medical Opinion Evidence*

Plaintiff challenges the ALJ's treatment of two medical opinions: the opinion of examining psychologist Dr. Ewell and the opinion of treating physician Dr. Ramirez. There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; *accord* 20 C.F.R. § 404.1527(d). Accordingly, "the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Moreover, "the opinion of an examining doctor, even if contracted by another doctor, can only be rejected for specific and legitimate reasons." *Id.* at 830–31.

Plaintiff also asserts the ALJ violated his duty to fully and fairly develop the medical record. *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). Social Security regulations require the Agency to make "every reasonable effort" to assist a claimant in gathering relevant evidence. 20 C.F.R. § 416.912(d). The Agency may order a consultative examination if there is difficulty acquiring evidence from treating sources. *Id.* § 416.912(e). The duty to develop the record is only triggered only when there is "ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d at

460. An examining provider's statement that the evidence is insufficient to properly assess impairment level may trigger the duty to develop the record further. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

### A. *Dr. Ewell's Opinion & the ALJ's Duty to Develop the Record*

The ALJ found that bipolar depression and borderline intellectual functioning were among plaintiff's severe impairments. Although plaintiff participated in limited counseling, the only comprehensive psychological evaluation in the record was conducted by psychologist James Ewell in May 2013. Dr. Ewell evaluated plaintiff at the request of the state Department of Human Services ("DHS") in order to assess her readiness to resume parenting her youngest son, who was at the time sixteen years old. Dr. Ewell diagnosed plaintiff with bipolar disorder, post-traumatic stress disorder, and borderline intellectual functioning. In his report, he summarized the conditions that led DHS, in 2012, to remove plaintiff's son from her care: their home was filthy and cluttered with garbage, had been without running water for a year, and included toilets, a bathtub, and buckets overflowing with human waste.

Dr. Ewell assessed plaintiff with "deficits in areas pertaining to psycho/social judgment and interpersonal problem-solving." Tr. 711. He also stated that her cognitive test results suggested she would "struggle . . . when faced with complicated scenarios requiring sophisticated forms of judgment and/or decision-making." Tr. 709. Dr. Ewell noted that at the time of the evaluation, plaintiff was living at the Samaritan Inn, a homeless shelter. Within the structure of the Samaritan Inn, plaintiff

> has been able to somewhat stabilize her daily life. She has not, however, been able to demonstrate an ability to stabilize her life outside a structured program. I would have concerns about Ms. Moore's ability to meet her own needs, if she were living in a truly independent manner. I would be even more concerned about her ability to meet her needs and the needs of her child.

Tr. 712. Dr. Ewell concluded his evaluation with the following disclaimer: "This evaluation was conducted to address Ms. Moore's general psychological condition, particularly as it pertains to parenting. It is not intended to address other non-related issues, such as eligibility for SSI benefits, or employability." Tr. 713.

After plaintiff obtained new counsel, the new attorney asked Dr. Ewell to complete a mental RFC form. Dr. Ewell refused, reiterating that his report "did not address issues related to eligibility for SSI benefits or employability. Therefore I cannot complete the form." Tr. 1221. Dr. Ewell checked a box recommending that the Agency order a new comprehensive psychological evaluation to assess mental RFC.

Plaintiff's lawyer then wrote to the ALJ. He cited Dr. Ewell's disclaimers about the applicability of his evaluation to the disability context. He also noted that agency reviewing psychologists, who had assessed *no* mental limitations, had not reviewed Dr. Ewell's report. He requested a comprehensive psychological evaluation pursuant to Dr. Ewell's recommendation, expressly noting the ALJ's duty to develop the record.

The ALJ found that the record was fully developed and denied plaintiff's request. He stated that the disability decision was based on "hundreds of pages of evidence" available in plaintiff's file. Tr. 18. Although he acknowledged Dr. Ewell's statement that his evaluation was not for disability purposes, the ALJ found "that fact does not completely negate the value of Dr. Ewell's objective findings or evaluation." Tr. 17. Finally, the ALJ faulted plaintiff's lawyer for being "inconsistent" in requesting a new evaluation; according to the ALJ, plaintiff could not simultaneously argue that Dr. Ewell's statements should be disregarded (thus triggering the need to develop the record) and credited (as a basis for finding plaintiff disabled.) *Id.* The ALJ went on to give weight to Dr. Ewell's opinion "that the claimant may struggle with complicated

scenarios, judgment, and decision-making[.]" Tr. 25. The ALJ accounted for that opinion in the RFC by limiting plaintiff to simple, routine tasks and simple work-related judgments.

As a threshold matter, I note that the ALJ erred by relying on plaintiff's "inconsistent" arguments about Dr. Ewell's opinion when he denied the request for a new evaluation. Tr. 17. Plaintiff argued that if Dr. Ewell's opinion is considered *applicable* to the disability context, it establishes disability by demonstrating that plaintiff has major deficits with respect to meeting her own needs. Plaintiff also contended that if Dr. Ewell's opinion is considered *inapplicable* to the disability context, there is insufficient evidence in the record to evaluate the extent of plaintiffs' mental limitations. There is no apparent inconsistency between those two positions; Dr. Ewell's opinion is the primary piece of evidence regarding the extent of plaintiff's mental limitations, so its applicability affects whether the record is fully and fairly developed. Moreover, it is well-established that a party may simultaneously advance alternative theories of a case—even if those theories are inconsistent with one another. *Cf. Poore v. Simpson Paper Co.*, 566 F.3d 922, 927 (9th Cir. 2009) (considering the plaintiff retirees' arguments that they had nonforfeitable rights and that the employer failed to meet the contractual conditions necessary to alter those rights). It is only *after* a party has benefited from taking a certain position that she may be barred from taking a contrary position. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (explaining that the doctrine of judicial estoppel generally precludes a party from "prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase" (citation and quotation marks omitted)).

Plaintiff argues that the ALJ erred by silently ignoring Dr. Ewell's opinion that plaintiff could not meet her own needs outside the structured environment of the Samaritan Inn. In the alternative, plaintiff argues that there is insufficient evidence in the record to fully assess her

mental limitations, and that the ALJ was obligated to order a new comprehensive psychological evaluation.

The ALJ did not err by adopting only some of Dr. Ewell's opinion. Dr. Ewell expressly stated—twice—that his opinion was not provided for the purposes of evaluating plaintiff's ability to work. Put simply, per Dr. Ewell's own statements, the limitations in his report are not *workplace* limitations. Given those express disclaimers, the ALJ could leave those limitations out of plaintiff's RFC without providing specific, legitimate reasons for doing so.

The ALJ did, however, violate his duty to fully and fairly develop the record. Dr. Ewell's report makes clear that there has been substantial variability in the severity of plaintiff's mental health limitations. Contrary to defendant's argument, the report is not solely based on plaintiff's self-reported symptoms; rather, it includes a summary of state agency findings that plaintiff's home was filthy and overflowing with human waste. The situation was serious enough that the state removed plaintiff's teenage son from her custody. The state agency's findings, coupled with Dr. Ewell's doubts about plaintiff's ability to meet her own basic needs and plaintiff's diagnoses of severe mental health impairments, strongly suggest that plaintiff had restrictions far more severe than those set out in the RFC for at least some part of the disability period.

The evidence in Dr. Ewell's report further underscores the problem with the omission of more than three years of the alleged disability period from the ALJ's decision. The ALJ's determination that plaintiff's mental limitations could be adequately accommodated with restrictions to simple, routine tasks and simple work-related decisions rests on evidence of plaintiff's functionality in 2015 (the time of the hearing) and, to a lesser extent, on evidence of her functionality between 2012 and 2015 (when she lived at the shelter.) Neither the ALJ nor plaintiff's former attorney asked any questions about the severity of her mental health symptoms

between 2009 and 2012, despite the evidence suggesting that her mental restrictions were greater during that time period.

The ALJ also noted that plaintiff attended only three counseling sessions between 2011 and 2015 and that examination notes generally show her "to be normal in psychological areas." Tr. 25. First, as noted in the section addressing plaintiff's symptom statements, the cited medical records show uneven mental health symptoms and varying success with medications; the ALJ's statement that records generally show only mild limitations is not a fair characterization of the record. Moreover, even if the treatment records uniformly documented only mild mental restrictions, there would be a glaring conflict between such conclusions and the findings of the DHS investigators documented in Dr. Ewell's report. More evidence is necessary to resolve that conflict. This is not a case where two medical professionals view the same evidence and disagree; it is case where it appears the medical professionals rendered their opinions without the benefit of complete information regarding plaintiff's mental state.

As it stands, the record is plainly inadequate to assess the extent of plaintiff's mental limitations. The ALJ therefore erred in denying plaintiff's request for a new psychological evaluation. The ALJ's error is even clearer in light of Dr. Ewell's recommendation that the Agency order such an evaluation. *Tonapetyan*, 242 F.3d at 1150.

On remand, the ALJ shall order a new comprehensive psychological evaluation and obtain any additional evidence necessary to evaluate plaintiff's mental impairments. The ALJ shall also hold a supplemental hearing and otherwise permit plaintiff to submit supplemental evidence. In rendering a new decision, the ALJ must address *all* periods of time relevant to plaintiff's allegations of disability, from June 1, 2009, to the date of the new written decision. I

note the possibility that plaintiff might qualify for a closed period of disability even if she currently has sufficient RFC to work.

B.   *Dr. Ramirez's Opinion*

Treating physician Dr. Ramirez advised plaintiff to avoid repetitive and forceful flexion of the elbows. Tr. 1174. The ALJ acknowledged that limitation in his summary of the medical evidence, but included no corresponding limitation in the RFC and gave no reason to reject any portion of Dr. Ramirez's opinion.

The ALJ did not err in excluding the elbow limitation from the RFC. The limitation was phrased as a recommendation, not a directive. *See Carmickle*, 533 F.3d at 1165. Furthermore, the inclusion of this limitation would not have affected the ultimate disability determination: neither the general definition of light work nor the specific DOT descriptions suggest that any of the jobs the ALJ identified at step five require repetitive, forceful flexion of the elbows. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("A decision of the ALJ will not be reversed for errors that are harmless." (citation and quotation marks omitted)).

III.   *Plaintiff's Other Allegations of Error*

Finally, plaintiff alleges that the ALJ erred in formulating the RFC and in identifying jobs plaintiff could do at step five. With respect to physical limitations, plaintiff contends the ALJ erred in finding she could stand or walk for six hours of an eight-hour work day, failing to include a limitation regarding forceful flexion of the elbows, and including only a minor limitation on fingering, feeling, or handling. In view of my decisions regarding plaintiff's testimony about her physical symptoms and Dr. Ramirez's opinion, I am not persuaded by plaintiff's first two arguments. I further find no error in the ALJ's limitation to more than frequently fingering, feeling, or handling is support by substantial evidence. Plaintiff has pointed

to no medical opinion recommending a more significant limitation in this area, and the ALJ fairly summarized the medical evidence in this area as supporting mild restriction.

With respect to mental limitations, plaintiff argues that a limitation to "simple, routine tasks" does not account for the moderate limitations in concentration, persistence, and pace identified by the ALJ. Although Ninth Circuit law on this point is not crystal clear, it appears that a limitation to simple tasks may account for moderate difficulties with concentration, persistence, or pace only if the medical record directly ties those difficulties to task complexity rather than to other issues. *See Senser v. Colvin*, 2017 WL 253847 (D. Or. Jan. 19, 2017) (summarizing case law in this area). Here, there is no basis to conclude that a restriction to simple, routine tasks accommodates plaintiff's difficulties with concentration and pace. The ALJ's assessment of moderate difficulties in those areas rests on Dr. Ewell's opinion, but Dr. Ewell expressly declined to provide specific job-based limitations. On remand and after obtaining additional evidence regarding the extent of plaintiff's cognitive limitations, the ALJ must consider whether a restriction in the RFC regarding concentration, persistence, or pace is warranted.

## CONCLUSION

The Commissioner's decision is REVERSED and this case is REMANDED for further proceedings. On remand, the ALJ shall order a comprehensive psychological evaluation, permit plaintiff to submit supplemental evidence, and convene a supplemental hearing. The ALJ shall then issue a new written disability decision. In the new decision, the ALJ shall reformulate plaintiff's RFC and perform a new step five analysis consistent with this opinion. The ALJ shall assess plaintiff's mental RFC consistent with a fully developed evidentiary record regarding mental limitations. The ALJ shall expressly consider whether the RFC should include a

limitation beyond the restriction to simple, routine tasks to address moderate difficulties with concentration, persistence, or pace. The ALJ's written decision shall address the entire period of alleged disability, beginning June 1, 2009.

IT IS SO ORDERED.

Dated this 24 day of August 2017.

                                  /s/ Ann Aiken
                                  Ann Aiken
                              United States District Judge